UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MICHAEL
ANDERSON,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

Case No. 2:18-cv-12334
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 13), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 15) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 15),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, James Michael Anderson, brings this action under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c)(3) for review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his application for

disability insurance (DI) benefits.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross-motion for summary judgment (DE 15) and the administrative record (DE 11).

### A.   Background and Administrative History

Plaintiff alleges his disability began on December 9, 2015, at the age of 46. (R. at 165.)  Plaintiff amended his alleged onset date to December 10, 2015.  (R. at 35.)  In his disability report, he lists bipolar disorder, depression, and anxiety as limiting his ability to work.  (R. at 198.)  His application was denied in August 8, 2016.  (R. at 86.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 111-112.)  On March 13, 2018, ALJ Manh H. Nguyen held a hearing, at which Plaintiff and a vocational expert (VE), Amelia L. Shelton, testified.  (R. at 30-51.)  On April 3, 2018, ALJ Nguyen issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13-29.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 163-164.)  However, on June 8, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Nguyen's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 26, 2018.

### B.   Plaintiff's Medical History

2

The administrative record contains approximately 590 pages of medical records, which were available to the ALJ at the time of his April 3, 2018 decision. (R. at 275-865 [Exhibits 1F-7F].) These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 2015, the alleged onset date. (R. at 18.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: disc protrusion, impingement and stenosis of the cervical spine, degenerative disc disease of the thoracic spine, dry eye, refractive error, presbyopia, bowel disorder, obesity, bipolar disorder, post-traumatic stress disorder, borderline personality disorder and alcohol and substance abuse disorder. (*Id*. at 18-19.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 19-20.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

. . . to perform medium work…except the claimant can never climb ladders, ropes o[r] scaffolds. The claimant can occasionally climb stairs and ramps, kneel and crawl. The claimant can frequently balance, stoop and crouch. [*i.e., exertional limitations*] He can never work around hazards such as unprotected heights or unguarded, uncovered moving machinery. [*i.e., environmental limitations*] The claimant can understand, remember and carry out simple instructions. The claimant can tolerate occasional changes in a routine works [sic] setting. The claimant can make simple work related decisions. The claimant can never deal with the general public but can occasionally deal with supervisors and coworkers. He will be off task ten percent of the workday for restroom breaks. [*i.e., mental limitations*]

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

In his opinion, ALJ Nguyen recognized that Plaintiff previously filed an application for DI benefits which was denied by the ALJ on December 9, 2015 (R. at 55-64), but then found that he is not bound to that prior decision under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) because there is new and material evidence justifying a change in Plaintiff's RFC. (R. at 16.) The Sixth Circuit recently modified the *Drummond* holding in *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which holds that principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Having determined that he was not bound by any prior decision, the ALJ here gave the evidence in the record a "fresh look," thus satisfying *Early. See Kimball v. Comm'r of Soc. Sec.*, No. 17-12659, 2018 WL 4102845, at *5 n.4 (E.D. Mich. Aug. 7, 2018) (finding *Early* did not change the Court's analysis of pre-*Early* ALJ decision because the ALJ had concluded she was not bound by the previous RFC due to new and material evidence), *report and recommendation adopted*, 2018 WL 4095081 (E.D. Mich. Aug. 28, 2018).

4

(*Id*. at 20-22.)  At **Step 4**, the ALJ determined that Plaintiff is capable of performing past relevant work as a cleaner.  (*Id*. at 23.)  The ALJ found alternatively, at **Step 5**, considering Plaintiff's age, education, work experience, and RFC, that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, packager and assembler of small products.  (*Id*. at 23-24.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 9, 2015.  (*Id*. at 24.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

6

Plaintiff alleges two claims of error: (1) the ALJ failed to obtain an expert medical opinion on the issue of medical equivalency for Listing 1.04; and (2) the ALJ violated the procedural aspect of the treating physician rule in evaluating the medical source opinion of Dr. Kathleen Phelps. (DE 13 at 9-16.) The Commissioner responds that substantial evidence supports (1) the ALJ's finding that Plaintiff's impairments did not medically equal Listing 1.04, and (2) the ALJ's assessment of the medical source opinion from Plaintiff's psychiatrist, Dr. Phelps. (DE 15 at 9-25.)

      **1.    Plaintiff's claim of error regarding the ALJ's Step 3 finding fails**

            **a.    The absence of a medical opinion on the issue of equivalency does not defeat the ALJ's Step 3 finding**

Plaintiff contends that the ALJ erred by failing to obtain an expert medical opinion regarding medical equivalency at Step 3 of the sequential evaluation, with respect to Listing 1.04. (DE 13 at 10-12.) At Step 3 of the sequential analysis, the plaintiff bears the burden of establishing that his impairments meet or medically equal a listed impairment. *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 644 (6th Cir. 2006). Plaintiff does not challenge the ALJ's findings that he does not *meet* the requirements of any Listing, and thus any such argument is waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived). "When a claimant has a listed impairment

7

but does not meet the criteria, an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'" *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, 2014 WL 688197 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. § 416.926(a)).

In support of her challenge to the ALJ's equivalency finding as to Listing 1.04, Plaintiff relies on Social Security Ruling (SSR) 17-2p, which became effective on March 27, 2017, arguing that this Ruling imposed "certain evidentiary requirements at the hearing level or at the AC level on the issue of medical equivalence." (DE 13 at 10.) The Commissioner agrees that the Ruling is "applicable to the ALJ's decision here." (DE 15 at 3.) Specifically, Plaintiff cites SSR 17-2p for the following proposition:

> To demonstrate the required support of a finding that an individual *is disabled* based on medical equivalence at step 3, the record must contain one of the following:
>
> 1. A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
>
> 3. A report from the [Appeals Council's ("AC")] medical support staff supporting the medical equivalence finding.

(DE 13 at 10 (quoting SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) (emphasis added))).

The problem for Plaintiff, however, is that the very language on which he relies makes clear that it applies *only* when the ALJ finds that a claimant's impairments *are* medically equivalent to a Listing. *See* SSR 17-2p, 2017 WL 3928306, at *3 (identifying record evidence required to "support of a finding that an individual *is disabled* based on medical equivalence at step 3") (emphasis added).  Here, the ALJ found the opposite – that Plaintiff's impairments are *not* medically equivalent to the Listing's requirements.  (R. at 19.)  A different part of SSR 17-2p describes the evidentiary requirements applicable to such a finding:

> If an adjudicator at the hearings or AC level believes that the evidence *does not* reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, *we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.*

SSR 17-2p, 2017 WL 3928306, at *4 (emphases added).  Moreover, with respect to an ALJ's responsibility to articulate the grounds for a "not medically equivalent" finding, SSR 17-2p provides:

> [A]n adjudicator at the hearings or AC level must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing.  If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator *is not required* to

9

articulate specific evidence supporting his or her finding that the individual's impairment(s) *does not medically equal* a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

*Id.* (emphases added).

In this case, the ALJ stated that he "examined and considered all listed impairments … with specific attention to the following listings: 1.04 (Disorders of the spine); 12.04 (Affective disorder); and 12.08 (Personality disorder)" and specifically found that Plaintiff "does not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments." (R. at 19.) Thus, under SSR 17-2p, the ALJ was "not require[d] … to obtain [medical expert] evidence or medical support staff input prior to making" that determination at Step 3 of the sequential evaluation, nor was he required to specifically articulate the bases for that conclusion. *See* SSR 17-2p, 2017 WL 3928306, at *4. *See also Cooper v. Comm'r of Soc. Sec.*, No. 18-12611, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019) (collecting cases holding that SSR 17-2p makes clear that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not meet or equal a listed impairment), *report and recommendation adopted by* 2019 WL 2208151 (E.D.

10

Mich. May 22, 2019); *Jammer v. Comm'r of Soc. Sec.*, No. 18-10445, 2019 WL 1372171, at \*8 (E.D. Mich. Feb. 22, 2019) (same), *report and recommendation adopted by* 2019 WL 1354037 (E.D. Mich. Mar. 26, 2019).

### b.   The ALJ's equivalency finding is supported by substantial evidence

While Plaintiff does not specifically argue that the ALJ's equivalency finding is not supported by substantial evidence, he does point to record evidence that he believes "could reasonably be interpreted to be equivalent" to Listing 1.04. (DE 13 at 12.)  Preliminarily, Plaintiff bears the burden at Step 3 to demonstrate that his impairment(s) meet or medically equal a listed impairment, not that the evidence "could reasonably be interpreted" to do so.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."); *see also Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (that Plaintiff's impairments "almost" equal a listing is not sufficient).  And, as the Commissioner correctly points out, Plaintiff's argument "'suggests a fundamental misunderstanding of the standard of review in this court and, accordingly, is without merit.  It is immaterial if … "[t]here is substantial evidence in the record supporting [his] claim" that claimant meets or equals one of the listing. []  Rather, … this court is only concerned with whether substantial evidence supports the Commissioner's decision.'"  (DE 15 at 16, quoting *Jackson o/b/o D.T.J. v.*

11

*Berryhill*, No. 16-1000, 2018 WL 3822464, at *3 (M.D. Ala. Aug. 10, 2018)

(internal citation omitted) and citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if

substantial evidence, or even a preponderance of the evidence, supports the

claimant's position, so long as substantial evidence also supports the conclusion

reached by the ALJ.").)

Listing 1.04(A) requires a disorder of the spine "resulting in compromise of

a nerve root (including the cauda equina) or the spinal cord" with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  "To establish the equivalent of

nerve-root compression [Plaintiff] must demonstrate a lack of motor strength, a

lack of sensory functions, and a positive straight-leg raising test, among other

things," and "[a]s for spinal-cord compression, [Plaintiff] must show that she

cannot 'ambulate effectively,' among other criteria."  *Bailey v. Comm'r of Soc.

Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

Plaintiff points to: (1) a report of a cervical spine MRI documenting disc

protrusions at C5-6 and C6-7 resulting in impingement of the spinal cord; (2) a

December 2016 evaluation before beginning physical therapy; and, (3) a February

12

2017 physical therapy note which he claims "documents gait dysfunction and neuroanatomical distribution of pain," as "the evidence that could reasonably be interpreted to be equivalent to" Listing 1.04.  (DE 13 at 11-2, citing R. at 643, 707, 838.)  However, the ALJ found that "the objective medical evidence and clinical examination findings do not corroborate the claimant's alleged symptoms and limitations."  (R. at 22.)  The ALJ acknowledged that Plaintiff "has a history of disc protrusion, impingement and stenosis of the cervical spine" and expressly considered the October 2016 cervical spine MRI cited by Plaintiff.  (R. at 21, citing R. at 643.)  In addition, the ALJ acknowledged imaging showing "degenerative disc disease of the thoracic spine at T7-8, T8-9 and T9-10 with minimal disc bulging at T8-9."  (*Id.* citing R. at 645.)  The December 2016 evaluation cited by Plaintiff reveals that he had negative straight leg raising, negative Romberg testing, and intact sensation (R. at 707) and the February 2017 physical therapy note revealed a decreased level of pain and "demonstrated improvement" (R. at 839).  And, when Plaintiff was discharged from physical therapy two months later, in April 2017, the examiner noted that Plaintiff reported "very good overall progress" without "unacceptable levels of pain or functional difficulty due to [his] low back,"

and that "his neck is not bothering him enough to warrant therapy."  (R. at 847-49.)[2]

The ALJ further found that Plaintiff "ha[d] described daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms," including "preparing simple meals, mowing the lawn, driving, handling finances, shopping in stores and watching television."  (R. at 22, citing R. at 210-12.)  Moreover, at the March 2018 hearing, when the ALJ asked how Plaintiff's neck problems affect his ability to use his arms or hands, he responded "not really."  (R. at 39.)  He further testified that his back problems affect his ability to bend over and stand or sit for more than two hours at a time, that he only took Motrin to help with pain, and he did not testify to any sensory, reflex or motor loss.  (*Id.*)

Plaintiff has failed to demonstrate how his allegations could result in a finding of medical equivalence, *see Land v. Sec'y of Health & Human Servs.*, 814

---

[2] Although the ALJ did not specifically reference these particular treatment notes in his decision, the ALJ need not expressly discuss each piece of evidence in his decision.  *Bailey,* 413 F. App'x at 855 ("But [an ALJ] is not required to analyze the relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953); *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir.2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting *Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

F.2d 241, 245 (6th Cir. 1986) (equivalency "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques"), or otherwise show that the ALJ's step 3 finding is not supported by substantial evidence.  Conversely, the ALJ's negative finding as to equivalency is well supported by substantial evidence.  Accordingly, Plaintiff's first claim of error fails.

### 2.   The ALJ's assessment of Kathleen Phelps, M.D.'s medical source statement is supported by substantial evidence

Plaintiff argues that the ALJ "violated the procedural aspect of the treating physician rule in evaluating the medical source opinion of Plaintiff's psychiatrist, Dr. Kathleen Phelps."  (DE 13 at 12.)[3]  The Commissioner responds that Plaintiff's claim of error should be denied because the ALJ's assessment of Dr. Phelps' medical source statement is supported by substantial evidence.  (DE 15 at 19.)

### a.  Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(b).  The regulations define medical opinions as "statements from acceptable medical sources that reflect

---

[3] Plaintiff initially complains that "the ALJ's determination to reject Dr. *Meyer's* treating physician opinion is not supported by substantial evidence," (DE 13 at 12 (emphasis added)), but this appears to be a typographical error, as the record does not contain an opinion by a Dr. Meyers, and Plaintiff only complains of the ALJ's treatment of Dr. Phelps' opinion in the remainder of his motion.

judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[4]  For claims

filed before March 27, 2017, such as this one, "the Commissioner's regulations

establish a hierarchy of acceptable medical source opinions[.]"  *Martin v. Colvin*,

207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*,

No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)).  "In

descending order, these medical source opinions are: (1) treaters; (2) examiners;

and (3) record reviewers."  *Id.*

Under the regulations, a treater's opinion must be given "controlling weight"

if "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and … not inconsistent with the other substantial evidence in [the] case

record."  20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F.

App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the

opinions of a treating source "since these are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [a patient's] medical

impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

---

[4] The cited regulations remain in effect for claims filed before March 27, 2017.
*See* 20 C.F.R. §§ 404.1520c, 404.1527.

§ 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the

physician must have an "ongoing treatment relationship" with the claimant.  20

C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[5]  *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature and
> extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

---

[5] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Tilley v. Comm'r of Soc. Sec*., 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).  Nevertheless, the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is applied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

### b.  Dr. Phelps' opinion

The ALJ recognized Dr. Phelps completed a medical source statement in February 2018 in which she opined that Plaintiff "was unable to maintain stability and function in the workplace" and "was unlikely to have a significant change in his employability." (R. at 22, citing R. at 862-65.) Dr. Phelps further opined that Plaintiff "had limitations in his ability to perform abilities needed to do unskilled work through skilled work" and "would likely miss more than four days of work per month." (*Id.*) The ALJ found this opinion "inconsistent with [Plaintiff's] conservative course of treatment, as well as the mental health records" and thus gave it "little weight." (*Id.*) The ALJ noted that Plaintiff "had improvement on examination" and "had normal memory, insight, judgment, concentration and through processes." (R. at 22, citing R. at 275-445, 670-860.)

Plaintiff acknowledges that the ALJ found Dr. Phelps' assessment inconsistent with Plaintiff's conservative course of treatment and that Plaintiff showed improvement on exam and had some normal examinations, but complains that the ALJ's citation to exhibits B1F (171 pages) and B6F (191 pages) in toto, without further specificity, fails to satisfy the "good reasons" requirement and "does not make clear to any subsequent review the reasons for that weight as required by SSR 96-2p and *Wilson*." (DE 13 at 14, citing R. at 22.) Plaintiff claims that "the same type of language was used by the ALJ" in *Weeks v.*

*Commissioner of Social Security*, No. 1:16-cv-121, 2016 WL 6067957 (W.D.

Mich. Oct. 17, 2016) and deemed inadequate by the court.  (*Id.*)

In *Weeks*, the ALJ provided the following discussion of a treating

physician's opinion:

> In June 2014, Dr. Simmons gave the claimant work preclusive
> limitations at a restricted range of sedentary work (Exhibits C12F,
> C13F and C15F).  The record as a whole does not support this decision.
> In addition, Dr. Simmons is not a orthopedic specialist.  Therefore, the
> undersigned gives this opinion little weight.

*Weeks*, 2016 WL 6067957, at *4.  The court found that "the ALJ's statement that

the opinion was inconsistent with the record as a whole is precisely the type of

vague language that the *Gayheart* court concluded was insufficient to permit

meaningful review."  *Id.*  (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365,

375-76 (6th Cir. 2013). However, the ALJ in the case at bar did not provide the

same type of "vague language" found insufficient in *Weeks*, but rather articulated

several reasons for affording Dr. Phelps' opinion little weight, including that it

was: (1) inconsistent with Plaintiff's conservative course of treatment; and, (2)

inconsistent with Plaintiff's mental treatment records, which show that Plaintiff

had improvement on examination and exhibited normal memory, insight,

judgment, concentration and thought processes.  (R. at 22.)  Accordingly,

Plaintiff's argument that the ALJ's decision in this case is similar to the ALJ's

decision found deficient in *Weeks* is unavailing.  And, to the extent Plaintiff is

complaining that the ALJ should have provided pinpoint cites to the record, as the Commissioner aptly points out, that argument fails as this Court has noted that the failure of the ALJ to provide pinpoint cites "is an inconvenience, not grounds for relief." *Ross v. Comm'r of Soc. Sec.*, No. 15-13133, 2017 WL 693375, at *10 (E.D. Mich. Feb. 2, 2017) (emphasis in original), *report and recommendation adopted by* 2017 WL 679353 (E.D. Mich. Feb. 21, 2017). *See also Abel v. Comm'r of Soc. Sec.*, No. 14-699, 2015 WL 4755204, at *9 (S.D. Ohio Aug. 11, 2015) ("[P]laintiff does not cite to any regulation or rule that requires an ALJ to provide pinpoint page citations. All that is required is that the ALJ and Appeals Council's decisions be capable of meaningful judicial review.") (citing *Wilson*, 378 F.3d at 544; other citation omitted), *report and recommendation adopted by* 2015 WL 5634669 (S.D. Ohio Sept. 25, 2015).  Unlike in *Weeks*, the ALJ's reasoning for discounting Dr. Phelps's opinion evidence is clear and capable of meaningful review. *Wilson*, 378 F.3d at 545.

### c.  The Court may not reweigh conflicting evidence

Plaintiff contends that Dr. Phelps stated in her assessment "clinical findings that support the limitations that she assessed" including "depressed mood; labile mood; irritability; poor attention/concentration; and difficulty with impulse control," and that "Dr. Phelps['] treatment records are consistent with her limitations."  (DE 13 at 15, citing R. at 862.)  Plaintiff then states that a September

21

9, 2016 report noted that Plaintiff continued to feel extremely irritable, had poor sleep, was depressed, and had problems with concentration and focus (*id.* citing R. at 692), and that "[a]dditional reports noted a restricted affect, depressed mood, anxious mood, and suicidal thoughts with a plan." (*Id.* citing R. at 750, 754, 758, 776, 798, 802, 828, 829.)  However, the September 2016 "limitations" recited by Plaintiff were contained in the "subjective" complaints section of the report.  On objective evaluation, Dr Phelps noted that Plaintiff's attention and concentration appeared "within normal limits," he was not excessively distractible, although his affect was of restricted range and he appeared very irritable and frustrated, his speech was of normal rate, volume and amount, his through processes were basically organized and coherent, there was no evidence of any thought disorder, Plaintiff participated well in the discussion, his recent and remote memory appeared grossly intact and his judgment appeared adequate for basic self-care. (R. at 693-94.)  And a review of Plaintiff's treatment reports with Dr. Phelps for the March 2015 through December 2017 time period reveal generally consistent mental status exams and objective assessments with the September 2016 report. (*See* R. at 300, 311, 372, 441, 749-50, 754, 757-58, 761, 765, 768-69, 772, 776, 779-80, 783-84, 787-88, 791, 794-95, 798-99, 802-03, 806-07, 810, 813-14, 817-18, 821, 825, 829.)

Further, as the Commissioner correctly notes, Dr. Phelps' most recent treatment report in December 2017, just two months before her medical source statement, notes that Plaintiff reported he has "been doing OK" and Dr. Phelps noted on objective examination that Plaintiff's attention and concentration appeared within normal limits, his focus was normal and while his affect was of restricted range, his mood was not significantly depressed.  (R. at 748-49.) Plaintiff's speech was of normal rate and volume and amount, his thought processes were organized and coherent, and there was no evidence of any thought disorder.  (*Id.*)  Plaintiff participated well in the discussion, his recent and remote memory appeared grossly intact and his insight and judgment appeared adequate for basic self-care.  (*Id.*)

These findings constitute substantial evidence supporting the ALJ's assessment of Dr. Phelps' medical source statement as inconsistent with the mental treatment records, and that Plaintiff had a conservative course of treatment, improvement noted on examination, and generally normal memory, insight, judgment, concentration and thought processes.  (R. at 22.)  Plaintiff's citation to other notations in the records of a restricted affect, depressed mood, anxious mood and suicidal thoughts asks the Court to, in essence, *reweigh* the evidence. This, the Court cannot do. "Our task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d

23

472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm Judge Davis's decision because substantial evidence supports it.").  In other words, "[i]f the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

### F.    Conclusion

Plaintiff has the burden of proof on his two statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers

Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: August 2, 2019                    s/*Anthony P. Patti*
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE